Filed 9/9/14  P. v. Aboytes CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GERARDO ABOYTES,<br><br>        Defendant and Appellant. | A139415<br><br>(San Mateo County Super. Ct.<br> No. SC075663A) |

Defendant Gerardo Aboytes's appellate counsel raises no issues and asks this court for an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  In accordance with *Wende* and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), defendant was informed of his right to file a supplemental brief, which he has not done.  Our independent review having revealed no arguable issues that require further briefing, the judgment is affirmed.

**BACKGROUND**

In May 2012, the San Mateo County District Attorney presented evidence to a grand jury regarding the fatal shooting of Julio Caesar Pantoja Cuevas on November 28, 2010.  This evidence included testimony from the victim's friend, Luis Ramirez, and three young women who said they were present at the shooting, and from Mario Cazarez and Alexander Guevara, who said they also were present and had participated in the events that led up to the shooting.  The evidence indicated that defendant had participated in the events leading up to the shooting as well.  The grand jury was also read testimony

1

by defendant before a grand jury in August 2011, in which he denied the allegations against him.

Specifically, evidence was presented that defendant, 19 years old when he testified in August 2011, was a member of the Norteños gang since 2007. His group of Norteños centered its activities around Vera Avenue in Redwood City, California, and often gathered at the Vera Cash Market. Defendant was a senior member of the group and would give orders to the younger gang members.

According to Cazarez, Norteños gang members were required to be involved in crimes and other activities. Also, if a Norteños gang member did not complete an assignment to attack someone, the member would lose face in the gang and could be beaten up by other gang members. The Norteños's enemy was the Sureños; the former claimed the color red and the latter claimed the color blue.

At about 7 p.m. on the evening of November 28, 2010, Cuevas and Ramirez drove to an apartment on Madison Avenue in Redwood City to visit Ramirez's former girlfriend, with whom Ramirez had a child. She lived in an apartment with two other young women. The three came outside to talk to Cuevas and Ramirez. Ramirez testified that he knew Cuevas for about two years, saw him almost every day, and that neither of them had anything to do with gangs.

Defendant lived in a nearby house. That evening, he called Guevara's cell phone. Guevara testified that, at defendant's request, he gave the phone to Jaime Rodriguez. Cazarez was also with Guevara and Jaime Rodriguez when defendant called. Defendant, Jaime Rodriguez, Michael Rodriguez, and another gang member had "jumped" Cazarez into the gang. Guevara had become a Norteños gang member two weeks earlier.

After appearing to talk to defendant, Jaime said there were some "scraps," a Norteños term for Sureños, on Madison. By defendant's phone call, Cazarez and

2

Guevara understood they were to go to Madison and attack the presumed Sureños who were there. Cazarez bicycled to defendant's house.

When Cazarez arrived there, he noticed two "guys" and three "girls" about two houses away. Cazarez, who thought one of the girls had associated with Sureños in the past, assumed the guys were Sureños because one of them was wearing a blue "LA" jacket. Each of the girls testified that they recognized Cazarez because he had previously identified himself to her as a Norteño and indicated that he protected the area for the gang. This time, Cazarez observed all of them, appeared upset, talked on a cell phone, and left, only to return shortly thereafter. Around the same time, others arrived, including Guevara, Jaime Rodriguez, and Michael Rodriguez.

The three girls and two guys found themselves surrounded by a group that identified themselves as Norteños, said this was their area, and wanted to know if Cuevas and Ramirez "banged," meaning were they gang members. They called Cuevas and Ramirez "scraps." One of the girls testified that what was said "was all about Norteños and that they were going to make the scraps that were there disappear."

Cuevas was wearing the blue LA jacket, but he and the girls denied that he had anything to do with a gang. According to Cazarez, this did not matter because Sureños sometimes said this and the guys were wrong to hang out with the girls regardless.

Jaime Rodriguez went up to Cuevas and punched him multiple times. Cuevas covered himself up. Ramirez testified that Cuevas grabbed a crucifix that was around his neck and held it in his hand. Jaime said something and Michael Rodriguez pulled out a gun and shot Cuevas four times. Ramirez saw two or three shots being fired and ran to the middle of the apartments. Cuevas died of multiple gunshot wounds, including one indicating that he was shot in the back.

3

The day after the shooting, Michael Rodriguez was arrested while he was a passenger in a car. A gun was found in the trunk of the car. It was later determined that the gun fired the bullets and a bullet fragment that were retrieved from the shooting.

Detective Richard Santiago of the Redwood City Police Department also testified. He was a seven-year police officer who for the past three years had specialized in the investigation of gang-related crimes. After testifying about his training regarding gangs, he opined that Cuevas's killing was an act related to criminal street gang activity. This was because a senior member of the gang, defendant, observed what he perceived to be rival gang members in his neighborhood and, deciding he was "going to clean house," called five others and told them about it. "Once he told them of this the expectation was for them to collectively as a group go over and check these individuals who were in their neighborhood," Santiago said. This would bolster the gang's reputation, as well as instill intimidation and fear in the community and rival gang members. It did not matter if the person that they killed was not a Sureño because the Norteños would set an example by killing him anyway. It was not unusual that an assault escalated to a homicide, whether planned or spontaneous. The desire of gang members to increase their status creates an impetus to extreme violence.

Eric Acha, an inspector with the San Mateo County District Attorney's Office responsible for the protection and relocation of witnesses, also testified. He said the three girls who testified were not legal United States citizens and were now "documented" with the immigration authorities. After the shooting, they were relocated and given monthly "benefits" for food, rent, and incidentals. Acha was able to arrange authorization so that one of the girls could work legally in this country, but this did not affect her overall legal status. He had made it clear to all three girls that they were on their own regarding their legal status in the United States after the case was over.

Guevara testified that he had lied to the first grand jury because he was scared. His family had since relocated on their own. Cazarez testified that he had agreed to tell the truth in his testimony in exchange for a 14-year prison sentence for mayhem and a

gang enhancement allegation, 85 percent of which he would be required to serve regardless of his good behavior.

The grand jury issued a three-count indictment against defendant. Count one alleged that he murdered Cuevas (Pen. Code, § 187, subd. (a)),[1] a felony, while an active participant in a criminal street gang and that the murder was carried out to further the activities of the gang (§ 190.2, subd. (a)(22)). It was further alleged that he committed the offense for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(2), and that he was a principal in the offense and personally and intentionally used a firearm that proximately caused great bodily injury or death to a person who was not an accomplice (§ 12022.53, subd. (e)).

Count two alleged that defendant willfully, unlawfully, and actively participated in a street gang with knowledge that its members engaged or had engaged in a pattern of criminal activity and willfully promoted, furthered, or assisted in felony criminal conduct by gang members (§ 186.22, subd. (a)), a felony.

Count three charged defendant with felony perjury (§ 118), and further alleged that he perjured himself for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(2).

Defendant's indictment was subsequently consolidated with the indictments of Cazarez, Jaime Rodriguez, and Michael Rodriguez. The indictment was then amended regarding defendant so that previous counts one through three were renumbered as counts three through five. Count five, the perjury count, was amended to state that the gang enhancement allegation was made pursuant to section 186.22, subdivision (b)(1)(A) and allege that the offense was a serious felony (§ 1192.7, subd. (c)(28)).

---

[1] All further statutory references are to the Penal Code.

5

Two additional counts were alleged against defendant in the amended indictment. Count six alleged that he willfully, unlawfully, and maliciously disabled and disfigured Cuevas (§ 203), a felony, that he did so for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(1)(C), and that this was a serious felony. Count seven alleged that defendant assaulted Luis Ramirez with force likely to cause great bodily injury (§ 245, subd. (a)(4)), a felony.

On May 14, 2013, defendant appeared before the court for a negotiated disposition of his case. He was advised of his legal and constitutional rights, including the maximum penalties he faced, the consequences of changing his plea and making admissions, the provisions of section 1016.5, and the period of parole pursuant to section 1170, subdivision (c). He stipulated to a waiver regarding section 654 and waived any procedural irregularities regarding the amended indictment. He then entered pleas of no contest to counts five, six, and seven and admitted the special allegations that accompanied counts five and six. His counsel stipulated that there was a factual basis for the pleas and admissions based on the grand jury indictments in the matter, the discovery of police reports and other documents (which are not in the record), conversations defense counsel had had with defendant, and recognizing that this was a stipulated sentence between the parties.

The court found that defendant made a knowing and intelligent waiver of his legal and constitutional rights, and that his pleas were freely and voluntarily entered. The court concurred with the pleas based on what the court had been told in chambers about what had factually occurred, also not contained in the record. It accepted defendant's pleas and found him guilty of the counts to which he pled no contest. The remaining counts were dismissed and the remaining allegations were stricken.

Defendant requested immediate sentencing and waived various procedural rights so that this could occur. The court sentenced him to consecutive terms as follows: the middle term of four years for count six; one-third of the middle term, that being one year,

6

for count five; one-third of the middle term, that being one year, for count seven; 10 years for the special gang allegation contained in count six; and one year for the special gang allegation contained in count five.  Thus, he was sentenced to a total term of 17 years. He was given 449 days' credit for time served, consisting of 390 actual days and 59 days in good conduct credits.  He was also ordered to pay certain fines, fees, assessments, and restitution, register as a gang member pursuant to section 186.30, and submit to genetic marker testing pursuant to section 296.

On July 5, 2013, defendant filed a notice of appeal and request for certificate of probable cause on the ground that he received ineffective assistance of counsel in violation of the United States and California Constitutions.  The trial court denied his request for a certificate of probable cause.

On August 2, 2013, defendant filed another notice of appeal and request for certificate of probable cause.  This time, he stated that he intended to raise sentencing issues on appeal that might or might not require a certificate of probable cause, and that he was unable without the assistance of appellate counsel to determine "what (if any) sentencing errors occurred and/or whether any claim for appellate relief from any sentencing error could be perceived as one that challenges defendant's guilty or no contest plea."  He further asserted that an appellate attorney might identify potential issues as to the ineffective assistance of counsel he received.  The trial court denied this request as well.

## DISCUSSION

Defendant was represented throughout the proceedings by counsel.  We find no indication in the record that counsel provided ineffective assistance.  Also, pursuant to our duty under *Wende* and *Anders*, we have conducted an independent review of the entire record, including regarding defendant's sentencing.  It reveals no arguable issues requiring further briefing.

## DISPOSITION

The judgment is affirmed.

7

 

STEWART, J.

We concur.

KLINE, P.J.

RICHMAN, J.